# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 24-8447-WM

**UNITED STATES OF AMERICA**

**vs.**

**CHARLES EDISON TATUM**

_____/

FILED BY_____SW_____D.C.

Sep 18, 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

### <u>CRIMINAL COVER SHEET</u>

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)?   **NO**

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?   **NO**

3. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?   **NO**

4. Did this matter involve the participation of or consultation now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?   **NO**

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By: _____

Brian D. Ralston
Assistant United States Attorney
Court ID No.: A5502727
500 S. Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Telephone: (561) 209-1068
Email: Brian.Ralston@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

|  |  |  |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  24-8447-WM |
| CHARLES EDISON TATUM | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

FILED BY ___SW___ D.C.

*Sep 18, 2024*

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____June 5, 2024_____ in the county of _____Palm Beach_____ in the _____Southern_____ District of _____Florida_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii) | Distribution of a Controlled Substance (methamphetamine) |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

*Bradley A. Freimuth*
*Complainant's signature*

Special Agent Bradley Freimuth, DEA
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by _Telephone (Facetime)_

Date: September 18, 2024

*William Matthewman*
*Judge's signature*

City and state: _____West Palm Beach, Florida_____     United States Magistrate Judge William Matthewman
*Printed name and title*

## AFFIDAVIT

I, Bradley Freimuth, being duly sworn, depose and state as follows:

## AGENT BACKGROUND AND PURPOSE OF AFFIDAVIT

1.      I am a Special Agent of the Drug Enforcement Administration (DEA) assigned to the Miami, Florida Field Division, West Palm Beach District Office, and have been so employed since April of 2023. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516(1). I have received training on the subject of narcotics trafficking and money laundering from the DEA and have been personally involved in investigations concerning the possession, manufacture, distribution, transportation and importation of controlled substances, as well as methods used to finance drug transactions and launder drug proceeds.

2.      Prior to my assignment with the DEA, I was a narcotics detective and a SWAT operator with the Highlands County Sheriff's Office (HCSO) in Highlands County, FL. In the course of my 6-year career at HCSO, I participated in numerous narcotics investigations in which I conducted physical and electronic surveillance, drafted and executed search warrants, and reviewed and analyzed recorded conversations and documents seized from drug traffickers. Through my training, education, and experience, which included debriefing cooperating drug traffickers, monitoring wiretapped conversations of drug traffickers, and investigating and conducting surveillance on numerous occasions of individuals engaged in drug trafficking, I became familiar with the manner in which illegal drugs are imported and distributed, the method of payment for such drugs,  the efforts of persons involved in such activity to avoid detection by law enforcement, as well as methods used to finance drug transactions and thereafter launder drug proceeds.

3.      As a SA with the DEA, I have conducted investigations of, and have been instructed

1

in investigative techniques concerning the unlawful distribution of illegal narcotics, possession with intent to distribute controlled substances, importation of illegal narcotics, use of communication facilities to conduct illegal narcotics transactions, maintaining places for purposes of manufacturing, distributing or using controlled substances and conspiracies to commit these offenses, in violation of Title 21, United States Code Sections 841(a)(1), 843(b), 856, 846, 952, and 963, respectively. Based upon this experience, and through the experience of other agents and detectives with numerous years of experience, I have also become well versed in the methodology utilized in illegal narcotics trafficking, the specific type of language used by illegal narcotics traffickers, and the unique patterns employed by narcotics organizations. I have also participated in surveillances, electronic surveillances, and wire surveillances. Additionally, I have arrested individuals for various drug violations and have spoken with a number of drug dealers, drug users, and informants concerning the methods and practices of drug traffickers. As a result of my law enforcement experiences, and the experience of other agents and detectives I have worked with in dealing with drug traffickers, I have found that they rarely speak openly about their illegal narcotics transactions. Instead, they use coded language to disguise their conversations about illegal narcotics transactions and also communicate via text messages.

4.     This affidavit is submitted in support of a criminal complaint charging Charles Edison TATUM with Distribution of a Controlled Substance, methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1). The information contained in this affidavit is based on information provided to me from other law enforcement officers and agents, a review of law enforcement reports, and my own personal knowledge. This affidavit is submitted for the limited purpose of establishing probable cause. It does not purport to describe everything known to me concerning the investigation.

**PROBABLE CAUSE**

5.      In or about August 2023, the Palm Beach County Sheriff's Office (PBSO) and the DEA West Palm Beach District Office (WPBDO) began a joint investigation into the drug trafficking activities of Charles Edison TATUM. Information from intelligence sources indicated that TATUM was distributing fentanyl, methamphetamine, cocaine, molly (MDMA), flakka (synthetic cathinones), and cannabis in the Riviera Beach, Florida area. Shortly after the investigation began, a PBSO Undercover (UC) Agent met and began purchasing controlled substances from TATUM.

6.      During the time period between December 2023 and June 2024, the UC made multiple controlled purchases of illicit drugs from TATUM, all of which were video and audio recorded. These included a controlled purchase of 1.45 grams of crack cocaine on December 19, 2023, a controlled purchase of 1.21 grams of crack cocaine on January 17, 2024, a controlled purchase of 10 pressed MDMA pills on February 12, 2024, and a controlled purchase of 1.53 grams of crack cocaine on April 11, 2024. In the course of the investigation, agents also became aware that TATUM had the capability to source multi-ounce quantities of crystal methamphetamine from an unknown supplier somewhere in South Florida and the UC then began negotiating a purchase of two ounces of crystal methamphetamine from TATUM.

**Controlled Purchase of Crystal Methamphetamine on June 5, 2024**

7.      On June 5, 2024, at approximately 4:00 p.m., the UC contacted TATUM via text message to confirm preliminary arrangements they had made the day prior for a purchase of two ounces of crystal methamphetamine for $1,300 using DEA Official Advanced Funds (OAF). TATUM replied, "Okay I got it." TATUM also sent a text instructing the UC to meet him at the "Bread house," which from previous deals, the UC understood to refer to the Flowers Baking Company parking lot located at 1350 N Congress Ave, Riviera Beach, Florida.

8.      At approximately 4:46 p.m., the UC arrived at the deal location and at approximately

3

4:48 p.m., TATUM told the UC via text that he was 5 minutes out. At approximately 4:54 p.m., TATUM arrived in the parking lot in a white BMW sedan. At approximately 4:55 p.m., the UC and TATUM exited their vehicles and met approximately mid-way between their vehicles. TATUM then handed two clear plastic bags containing a crystalline substance to the UC and the UC handed $1,300 in OAF to TATUM. During the brief conversation that followed, the UC asked TATUM how much he thought the UC should charge for a gram of the crystal methamphetamine and TATUM responded, "$100.00 a gram." At approximately 4:59 p.m., the transaction concluded and TATUM departed the target location.

9.     This controlled purchase was audio and video recorded. Subsequent to the operation, the crystal methamphetamine purchased from TATUM was submitted to the DEA Southeast Laboratory for analysis. On June 24, 2024, the analysis was completed. The results confirmed that the substance was crystal methamphetamine and indicated that its net weight was 55.47 grams and that it was 98% pure.

## Conclusion

10.    Therefore, based on the facts and information set forth in this affidavit, I respectfully submit that there is probable cause to believe that on June 5, 2024, Charles Edison TATUM committed the criminal offense of Distribution of a Controlled Substance, methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1).


FURTHER YOUR AFFIANT SAITH NAUGHT.


*Bradley A. Freimuth*
BRADLEY FREIMUTH
SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION


Sworn and attested to me telephonically (via facetime)
by the applicant in accordance with the requirements
of Fed. R. Crim. P. 4.1 on this  18th   day of September 2024.


HON. WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE

5

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

<u>PENALTY SHEET</u>

**Defendant's Name**: <u>Charles Edison Tatum</u>

**Case No**: 24-8447-WM

Count#: 1
Distribution of a Controlled Substance (methamphetamine)

21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(viii)

* **Max. Term of Imprisonment:** 40 years
* **Mandatory Min. Term of Imprisonment (if applicable):** 5 years
* **Max. Supervised Release:** 4 years to life
* **Max. Fine:** $5,000,000
* **Special Assessment:** $100

**\*Refers only to possible term of incarceration, supervised release and fines.  It does not include
restitution, special assessments, parole terms, or forfeitures that may be applicable.**